T.C. Memo. 2005-44


UNITED STATES TAX COURT


MICHAEL NORTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2145-02L.                    Filed March 7, 2005.


Michael Norton, pro se.

<u>Rebecca Duewer-Grenville</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


VASQUEZ, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner seeks review of respondent's determination regarding collection of his 1995 income tax liability.

_____

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed the petition, petitioner was incarcerated in Sheridan, Oregon.

On November 6, 1996, petitioner was arrested and his funds were seized (seized funds). The seized funds totaled approximately $4 million, which included $1.3 million that was repatriated from a Swiss bank account.

On July 14, 2000, petitioner pled guilty to one count of tax evasion in violation of section 7201 for 1995 and one count of wire fraud. In the written plea agreement, petitioner stated that he understood that there was a tax deficiency of $440,041.85, plus interest and penalties, related to 1995. Petitioner and the Government agreed that, after financial disclosures by petitioner demonstrating he did not have sufficient assets to pay the tax, the "principal amount of the taxes due and owing" for 1995 would be paid from the seized funds. Petitioner further stated that he understood and agreed that any penalties and interest assessed for 1995 would not be paid out of the seized funds. Petitioner further agreed that any and all of the seized funds not used to pay restitution to the victims of his crimes and not used to pay his tax deficiency for 1995 would be forfeited to the United States and he did not and

would not claim an interest of any kind in the seized funds.  The plea agreement concludes with statements acknowledging that petitioner had adequate time to discuss the case with his attorneys, his attorneys provided him all the legal advice he requested, he made the plea voluntarily, no one coerced or threatened him to enter into the plea agreement, and his attorneys explained all the rights he had as a criminal defendant and all the terms of the plea agreement.

Petitioner was represented during his criminal trial by two experienced criminal defense attorneys, Penelope Cooper and Ted Cassman.  Petitioner's attorneys signed the plea agreement and stated that petitioner understood all the terms of the plea agreement, and that petitioner's decision to plead guilty was knowing and voluntary.

On November 14, 2000, petitioner signed a Form 4549, Income Tax Examination Changes, for 1995.  Petitioner agreed to a $440,042 deficiency in tax and a $330,031.50 fraud penalty pursuant to section 6663 for 1995.  The Form 4549 listed $367,289.70 in interest due as of November 23, 2000.  Above the signature block Form 4549 states:

> Consent to Assessment and Collection--I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report.  Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus additional interest as provided by law. * * *

In 2001, respondent assessed the tax, penalty, and interest for 1995. During 2001, petitioner's tax deficiency for 1995 of $440,042 was paid out of the seized funds.

On June 28, 2001, respondent filed a notice of Federal tax lien regarding petitioner's 1995 tax year (notice of lien). That same day, respondent sent petitioner a copy of the notice of lien.

On July 25, 2001, petitioner timely filed a Form 12153, Request for a Collection Due Process Hearing, regarding his 1995 tax year. In the hearing request, petitioner stated: "I believe these taxes were paid from the monies seized by U.S. Customs."

On November 8, 2001, respondent mailed petitioner a letter identifying Appeals Officer Fernando Orozco as assigned to consider the collection action and to conduct petitioner's hearing.

Petitioner had a correspondence hearing with Appeals. On November 25, 2001, petitioner wrote Appeals Officer Orozco a letter setting forth petitioner's position regarding his case. Petitioner claimed that his total tax liability for 1995, including penalties and interest, had been paid.

On November 29, 2001, Appeals Officer Orozco prepared an Appeals transmittal and case memorandum. Appeals Officer Orozco noted that petitioner was convicted of tax evasion, and that the Internal Revenue Service (IRS) had received a payment of

$440,041.85 for petitioner's tax deficiency for 1995. Appeals Officer Orozco stated that there was no agreement to pay off, or write off, petitioner's penalty or interest for 1995. Appeals Officer Orozco noted that all required procedures and applicable law had been followed and petitioner offered no collection alternatives.

On November 30, 2001, respondent issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 to petitioner regarding his 1995 tax year (notice of determination). In the notice of determination, respondent determined that the filing of the notice of lien was appropriate, that the assessed interest and penalties were due and owing yet remained unpaid, and that petitioner had not offered an alternative to enforced collection action. The attachment to the notice of determination stated that petitioner argued solely that the entire tax liability had been paid from the seized funds, and noted that the IRS received funds to pay only the tax deficiency and the current amount owed was for the fraud penalty and interest.

## OPINION

Section 6320 provides that the Secretary will furnish the person described in section 6321 with written notice (i.e., the hearing notice) of the filing of a notice of lien under section 6323. Section 6320 further provides that the taxpayer may

request administrative review of the matter (in the form of a hearing) within a 30-day period. The hearing generally will be conducted consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c).

Pursuant to section 6330(c)(2)(A), a taxpayer may raise at the section 6330 hearing any relevant issue with regard to the Commissioner's collection activities, including spousal defenses, challenges to the appropriateness of the Commissioner's intended collection action, and alternative means of collection. Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, 114 T.C. 176, 180 (2000). If a taxpayer received a statutory notice of deficiency for the years in issue or otherwise had the opportunity to dispute the underlying tax liability, the taxpayer is precluded from challenging the existence or amount of the underlying tax liability. Sec. 6330(c)(2)(B); Sego v. Commissioner, supra at 610-611; Goza v. Commissioner, supra at 182-183.

When the Commissioner issues a determination regarding a disputed collection action, section 6330(d) permits a taxpayer to seek judicial review with the Tax Court or a U.S. District Court, as is appropriate. If the underlying tax liability is properly at issue, we review that issue de novo. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181. If the validity of the underlying tax liability is not at issue, we

review the Commissioner's determination for abuse of discretion.
Sego v. Commissioner, supra at 610.

Petitioner's sole claim is that the penalty and interest for
1995 were supposed to be paid or should have been paid out of the
seized funds. Petitioner's claim is without merit.

The plea agreement is clear: the seized funds could be used
to pay the tax deficiency for 1995, but petitioner agreed that
the seized funds would not be used to pay his penalties or
interest for 1995. Assistant U.S. Attorney Charles B. Burch, who
prosecuted petitioner, credibly testified that the Government
agreed to pay petitioner's 1995 tax deficiency out of the seized
funds as the sole amount to be paid out of the seized funds
toward petitioner's tax obligation for 1995. Mr. Burch further
testified that the Government never agreed to write off the
penalties and interest or pay the penalties and interest out of
the seized funds.

Petitioner's testimony and claims to the contrary are not
credible. The Court is not required to accept petitioner's
unsubstantiated, self-interested, and questionable testimony.
See Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964),
affg. 41 T.C. 593 (1964); Archer v. Commissioner, 227 F.2d 270,
273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court;

<u>Weiss v. Commissioner</u>, 221 F.2d 152, 156 (8th Cir. 1955), affg. T.C. Memo. 1954-51; <u>Schroeder v. Commissioner</u>, T.C. Memo. 1986-467.

We note that petitioner did not call his criminal defense attorneys as witnesses.  We infer that their testimony would not have been favorable to petitioner.  See <u>Wichita Terminal Elevator Co. v. Commissioner</u>, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).

Petitioner has failed to raise a spousal defense, make a valid challenge to the appropriateness of respondent's intended collection action, or offer alternative means of collection. These issues are now deemed conceded.  See Rule 331(b)(4).

We conclude that respondent correctly sustained the notice of lien.  In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.